Good morning, Your Honors. The Police Court, Matthew C. Bassett from Hawaii Disability Rights Center, before and behalf of defendant appellate Marcus I. These are our companion cases, one involving fees and interpretation of local rules, one involving interpretation of a circuit court case regarding a I'm the same lawyers arguing both of the two cases that are, so why don't you go ahead then. Are you appellee in one and appellate in the other? I'm for the defendant appellate in both cases. So why don't you argue both cases then and then we'll respond in both cases. I mean I see no reason to make you stand up and sit down for both. Thank you, Henrietta. We'll start with case 09-5988. That was the issue regarding the district court case interpretation by Judge Hefo's circuit court decision, order reversing a summary judgment for my client on the obligation to fund the Mana House and the issue of whether the Herringhouse or Young's decision involved a different issue than Judge Hefo's residential order on the residential component as a related service. If the court would indulge me, the facts are somewhat complex, involving a consolidated request for due process under the IDEA. Back in August of 2006, my client was residing in a and placed at that therapeutic leave-in program because he had a settlement agreement placing the child academically at a day treatment program called Loveland Academy on the island of Oahu. The parents at that time resided on Maui. I handled the my client at Loveland Academy. That was a separate due process case. In August of 2006, at the time of the settlement, in August of 2006, the department proposed to place Marcus in a child and family service program, which was improperly staffed. They agreed to place Marcus at Loveland Academy, but were not going to be responsible for his housing. They said the Department of Health was going to pay for his housing under the waiver program because they get federal reimbursement through the waiver program. That's handled through the DD division of the Department of Health. In this fee-shifting program, my client had no problem having the Department of Health pay for the program. Also, my client intimated to me that he was unhappy with the Mauna House. He didn't like it. He wanted to pull him out and put him in another program. I informed him that under this settlement agreement, under this rubric of payments, that the Department of Education is not obligated to cover the housing at this time because it is not in the IEP. The residential home component is being covered by the Department of Health. You pull him out of the Mauna House, you're on your own. You need to go to the principal, that was at Yale School, and conduct an IEP meeting and propose the demands. Just to cut through all this, eventually there were two due process requests coming out of two different IEPs, is that right? No, no. This is what happened. He did in fact discuss an IEP. That IEP meeting was conducted in September 8, 2006. In August of 2006, I was getting phone calls from the Mauna House and from Child Protective Services saying that the Department of Health had quit funding the Mauna House because my clients refused to participate in the Medicaid program, in the waiver program, because they didn't qualify. They didn't qualify for the mean test and they would have to deem $9,000 to participate in this program. That's the first month cost of the program. So, I wrote up the first request for due process. I was in SY 06, 07, 05. Sir, sir, sir, stop. So, there were two requests for due process. Yes. And they were both, because ultimately it's a race to decata problem, so all the rest of this is really not very relevant, except to figure out what was before the administrative law judge, which were both requests for due process that were consolidated. Yes, they were both consolidated. Okay. There was a determination made, which was that you were entitled to the residential payment. Yes. Was that specified as being with regard to one or the other of the due process request? Yes. The due process request that I drafted, the one ending in 025, I specifically stated that the payments for the Mauna House were terminated. That would cause a unilateral replacement. I requested that the DOE immediately pay for the Mauna House. I didn't give any dates or specificity, because he was going to be discharged to the street. And the second request for due process was just to have residential component placed in the IEP. What I want to know is what did the administrative law judge decide? He decided that the DOE must fund the Mauna House. Right. And that was on my motion for summary judgment, because there was urgency in that matter. And so I generally don't file motions for summary judgment, because you need a – you want to have an actual record. That was a resolution of both the requests for – No. Just the one. That's what I'm trying to figure out. Why not? Just a single issue on the Mauna House. That was it. That was all I asked for. That was all I was given. That was what was appealed to Judge Hefo, the funding for the Mauna House. Judge – on that appeal, it was an interlocutory partial appeal on the summary judgment motion, the partial summary judgment on the one issue. Judge Hefo ruled that the Mauna House was a medical psychiatric program serving his medical psychiatric needs separate and apart from his educational needs. Therefore, the state doesn't have to pay for the Mauna House. And what she did, she reversed the hearing officer's motion for summary judgment. And because she's – But eventually she decided that she was in fact granting summary judgment to the government. Yeah. Well, yes. And my – So what is your argument in the end for why this isn't right? I understand why you think she was wrong. And she may well have been wrong. Yeah. But what is the reason why it's not res judicata? The issue for payment on the Mauna House is res judicata. I don't have any issue with that. The reversal – my interpretation of the reversal – first, I thought there was some ambiguity in it because it was a reversal because she didn't have sufficient information. Myself and Ryan Oda, who wrote the order and wrote a letter on October 27th of the hearing officer, said that the order that he wrote wasn't res judicata and it didn't render the issues moot. He said that when he requested that his motion for dismissal be removed from the hearing officer, actually had the same belief. Doing my due diligence researching the intent of a reversal of a summary judgment in the appellate courts, it was clear that once you – it's not just that you don't win, you lose, that the summary judgment is reversed against you. It has the same force and effect as a summary judgment. So her affirming that her reversal was a summary judgment was exactly the same as reversing the summary judgment. So it had no different force and effect. She had made it clear that the parents are not obligated to pay or that the DOE is not obligated to pay for the monohouse. That was DOE SY 0607-025. That – by the time the hearing started, the monohouse was moot. There was no – the monohouse had been closed for three or four – Not at the time of the request for due process or at the time of the second IEP. The second – the IEP meeting conducted on September 8, 06, coincides with hearing officer Young's decision. Hearing officer Young's decision states specifically that the issue for residential care is still at issue. He didn't say the issue of the monohouse is still at issue. And that's – that was the critical element of Moe's decision because she said the hearing officer stated that the monohouse was at issue. That's not true. And when you look at his order, he ordered that residential care, that nonmedical room and board, that a place to sleep. He said at the end of the day, he needs a place to sleep. That's nonmedical. That's not the monohouse. He did not specifically say pay for the monohouse. His order said per the IEP meeting of September 8, 2006, residential care is a related service that the DOE must pay for. That was SY 0607-042. But the question is what did Judge Hefo say she was issuing a summary judgment on? Both due process claims. No. Only on the monohouse was it very specific. Is it a decision? For Rice Trudicata purposes, the issue is what was the claim as a whole. What was before her? Was the DOE responsible for the payment of the monohouse? That was the claim. It was the therapeutic living program she defined in her order, the therapeutic living program as defined in the footnote was the monohouse. And so she did not say that. If she said that in her order that the DOE is not responsible for nonmedical room and board, she would essentially repeal 34 CFR 300.104, mandating requiring the department to fund nonmedical room and board for residential care. That would have been a nullity. But, again, specifically in her order, she specifically stated that her decision was limited to the monohouse because she stated specifically that the services he was receiving there were not related to his educational needs, but related to his medical and mental and social health needs. Subsequent to the monohouse closing, my client went to a program that was set up by Loveland Academy, which was an apartment, serviced with a skills trainer, clearly not a medical facility, clearly just a room and board facility. The Department of Education is refusing to pay for that and is continuing to refuse to pay for his room and board. On the first page of Judge Mulway's decision, she said the clear issue, or the single issue before me, is whether the DOE is obligated to pay for, if it's res judicata on the DOE's obligation to pay for the monohouse. And she specifically states the monohouse. Hearing Officer Young's order was the DOE is obligated to pay for room and board as a related service pursuant to the 9806 IEP meeting in which my client was asking that the DOE put in a residence program, a housing program. This was because I had informed my client, go to the meeting, demand that they put in a room and board element into the IEP so that you can pull your child out of the monohouse and find another appropriate program for him. Because as long as it's not in the IEP, the room and board care or the residential care will not be funded by the Department of Education. So it's clearly a distinct and different issue than payment for the monohouse. You know, the separate issue is attorney's fees. I'm rethinking this. I'm having trouble enough keeping this one in my head. Why don't we hear from the other side, and then you can respond and we'll save attorney's fees for the next iteration. But what about the other case? Do you want to do the other case afterwards? Yeah. Okay. Thank you. This part. Good morning, Your Honors. Tashima Fletcher and Berzan. My name is Jerry Yashiro. I'm the Deputy Public Defender. I'm sorry. Excuse me. I'm the Deputy Attorney General representing the Department of Education. Did you used to be the public defender? Yes, I used to be a public defender. I'm sorry. Okay. What is involved in this matter are two administrative hearings that were filed by Marcus's parents. It was for the 06-07 school year, and it also involved the September 8, 2006 IEP. Specifically. So in your view, the first hearing and the first summary judgment involved both? Yes, both matters. The review process request and both the August and both the non-IEP claim and the IEP claim. Yes. The first one. How do we know that? Pardon me? How can we tell that? It was in the pre-hearing notes from the administrative hearing officers stating that it was agreed that the parties were consolidating these cases. In his decision, I believe it's also stated that the parties had agreed to consolidate these matters. Okay. Then they went before the administrative law judge. They went with the petitioner's or the parent's attorney filed a motion for partial summary judgment. The attorney representing the Department of Education filed a motion to dismiss. That was heard before the administrative hearing officer. The administrative hearing officer at that time granted summary judgment to the parents stating that the DOE was responsible for what he said. I believe it was residential placement, which is presently Mana House. The DOE was responsible for that payment. Okay. But it was partial summary judgment. Yes. That went to the court. Then the court, there was a confusion about whether the court was, in fact, granting summary judgment, ordering a grant of summary judgment to the government. Eventually, it turns out they did, but on what? If it was partial summary judgment, I mean, I understand that race judicata applies to a claim, but what was the claim if this was all only a partial summary judgment? Well, because the cases were consolidated, I would argue that it was both whether the Department of Education was responsible for both specific payment to Mana House, but also whether the DOE was responsible for the students. Because it wasn't on the student's IEP, a residential component, and the parents were asking in their request under DOE-SY-0607-042 that residential placement be a part of the student's IEP. The judge, looking at her analysis, she went through and stated that Which judge are you talking about? I'm sorry. Judge Hifu, the state circuit court judge. When she ruled reversing the administrative hearing officer's granting of summary judgment to the parents, she stated that from her going through the DOE, the student's IEP team had not made the determination that the student needed a residential component. Wait a minute. This is her first decision? This is her first decision. Go ahead. She went through and said that it wasn't a decision made by the IEP team. In fact, it was a decision made outside. There were no IEP team members present when the student was moved from He had been at Kahimohawa, and then he got moved to Mana House. But doesn't that perhaps prove up their point? Because there was a second, there was an IEP at which a meeting in which it was included, I mean it was discussed and not, as I understand it, but not included. It was discussed, but yeah, it was not included. So the piece that she was operating on seemed to be the piece that dealt with Mana House and preceded the IEP. By the time of the September meeting, was it clear that Mana House wasn't going to exist? I don't know. I don't believe that it was clear at that time that Mana House was not going to be existing. It's at least clear that the whole case was not before her because the transportation and visitation issues were dealt with later on, and nobody has ever claimed that those were covered by Judge Ito's order, right? True. That is true. But I believe if the court would look at the September 8, 2006 IEP, in there it does have that the Department of Education will provide transportation to the student from his residential setting to the school and then back to his residential setting. And I believe it's also stated in the settlement agreement that was done previously to the September 2006 IEP that the DOE would provide that transportation. And so to me, the issue of transportation of the student from where he was living to go to his schooling was never an issue. And in fact, the hearings officer himself, in his April decision, in findings of fact 31, states that it's in the student's IEP that he's to receive. But the visitation wasn't. My only larger point, the visiting by the parents was not. That was something. So the only point of all this is that the entire issue was not adjudicated in the first administrative law judge decision or before Judge Haifa because it was only a motion for partial summary judgment. That's correct. So the question is what was before her on the motion for partial summary judgment? It was for, to me, whether the DOE was responsible for students' residential employment or not. Now, eventually there was a second judgment. Is that right? Or a clarification? Yes. And what did that provide for? What did that cover? She confirmed her prior finding that she was granting summary judgment for the Department of Education. On what issues? On the issue in regards to residential placement, that the DOE was not responsible for the student's residential component. Now, at that point, were there other things still an issue between the parties? Yes, the visitation. The visitation. But that was never raised by the parents' attorney at either the any time before Judge Haifa, and she could have heard those issues. Okay. So then how do you know it was an issue? I mean, it was raised before the hearing officer. Yes. In the administrative proceeding. Yes. But it was not appealed to the court, to the district court? I don't believe it was. It was not appealed to the court? What was appealed to the circuit court was the main issue of the residential placement, whether the Department of Education. It wasn't even decided in the first case, was it? Pardon? It wasn't even decided in the first administrative hearing. It was a motion for partial summary judgment. At that time, no, it was not addressed. Well, can you take an appeal from the administrative due process hearing, you know, from a partial judgment to the court, or do you have to wait until you get a final judgment on all the issues? I believe that we did the correct thing by taking the appeal of the administrative hearing officers, granting a partial summary judgment to the circuit court. Did you know there were other issues still pending before the hearing officer? Yes. And I would argue that in regards to the issue of visitation, if the Department of Education is not responsible for students. Was visitation brought up before the hearing officer at that point? Yes. It was one of the initial issues that the parents had brought up when they filed for their request for due process under DOE SY 0607-042. But I could argue that if the DOE is not responsible for the student's residential component, then the DOE would not be responsible to provide any type of visitation between the student and his family. But if the student contends that the DOE is responsible and asks for a hearing, it's up to the hearing officer to decide that issue, right? Or not? Are you saying it's outside the jurisdiction of the hearing officer? Well, I would say, well, the hearing officer decided that issue by his granting of partial summary judgment in regards to the residential component. And so, to me, the visitation piggybacks that. Because if you look at the student's IEP, especially the September 8, 2006 IEP, there's nothing in the student's IEP, either his goals and objectives or list of special education services or related services that would require any type of visitation or, you know, going to see the parent or working with them. So the IEP team had determined that the student, as part of his educational program, did not need that component in his IEP. Are you going to address the fees question? Yeah. I can address that. Yeah, so why don't you do fees and then you can respond on fees.  Yeah. Okay, thank you. We would argue to you respectfully that the parent's attorney is not entitled to attorney's fees because, one, they are not the prevailing party. Judge Shifu had decided that, made the determination that. . . Well, that's true on that issue, but what about the other issues? I believe, well, visitation is not an issue because if the DOE is not responsible for the residential component. . . But you didn't appeal that. No. It was an order from the administrative law judge and you didn't appeal it, so we won. True, but to me, the visitation fault is part of the residential component. If a student is not. . . If, say, like the Department of Education was obligated to pay for the student's residential. . . But you lost. I don't understand. I guess the question is, what does that have to do with, you know, who is the prevailing party on that issue? Well, there has to be a change, a material change in the status between the parties, and I would argue that there was not a change between the Department of Education and the parents. You mean on the residential? On the residential and on the visitation. There's three issues. Visitation and transportation. There's no change between the relationship between the parties on transportation. Yeah, on transportation. And on visitation. And on visitation, that's correct. So because there's no change under whatever that case is, it's not a prevailing party? Yes. If you had not paid. . . I don't know whether you paid or didn't pay for those things. But if you didn't pay, couldn't he have gone back and said you lost on this and you have to pay? I'm sorry, could you? He had an order from the Administrative Law Judge that you had to pay this. You didn't appeal it. You're saying logically you shouldn't have had to pay it if you weren't responsible for the residential placement. But that wasn't the final order. The final order was that you did have to pay it. Did you pay it? I believe, yes. So there was a change. What you said is it. I mean, she's talking, I assume, about the visitation and the transportation, right? Right. And you did pay for those, I'll call them expenses, right? Yes. Pursuant to the order of the hearing officer. Yes. Well, the visitation we have, but transportation has always been, I mean, the Department of Education has always paid for the students' transportation. And to me that was not really ever an issue because the Department of Education had been paying it and it was in the students' IEP. It was never an issue? You were paying it before the hearing? Yes. The parents raised it as an issue, but. Let's just talk about the visitation. So the hearing officer said DOE has to pay for the visitation. Yes. And you did pay? Pursuant to his. Did you argue before the hearing officer you did not have to pay? We argued that, yes, because. So isn't Judge Berzon correct in that you lost on that issue before the hearing officer? Yes. Over the administrative hearing officer, yes. So the student is a prevailing party on that issue, isn't it? Because you never appealed it. We appealed his decision to State Circuit Court and then it got removed to the District Court, but that specific issue we did not address, no. All right. Let's assume he was the prevailing party, then what? Then what? Then was Judge Mulvey wrong about the fees? I don't believe she was because they had two opportunities to follow the local rules and they failed to follow them. You were supposed to file the. . . You were supposed to confer. You did confer. You had a mediation session. You had their position in writing. In any practical sense, wasn't there compliance with what's supposed to be happening? Were you in any way confused about what their position was or what they were seeking or what fees they were seeking? No, I was not confused, no. But to me, they had been ordered to. . . I mean, she had specifically told him he needed to follow these guidelines and I don't believe that those were met. But the earlier conference you did have, you did have an earlier conference that included fees, right? I believe it was back in April or May. But you discussed fees? Yes, that came up. And you said, no, we're not going to pay or something like that? I believe we came up with a lot less amount than what they were requesting. I see. So you did discuss it, but you didn't reach agreement? Correct. And was there something different about anybody's position at a later time? I mean, that a new conference would have helped to clarify or resolve? Possibly if . . . Say, if he raised it again later, would you have upped your offer? Maybe? No. No? I would have requested that he lower his offer a second time. Would you have expected him to lower his demand? Possibly. I mean, that's also a possibility. But you don't know? Yeah, I don't know. Okay. Thank you. Good enough. Thank you very much. And we'll hear from the other side, both response on attorney's fees and rebuttal, if you like. Thank you, Your Honor. Yeah, and that would be in the . . . Let me get my files mixed up here. Thank you. Yeah, under 09, the 17608, the fee case. Within 14 days of a judgment, you must file your motion for fees. I did so. The hearing officer ordered several things in his decision based on the consolidated request for due process. The visitation issue was a major issue. It wasn't the major issue, but it was a significant issue. The parents proposed at the September 8th IEP meeting that they provide, that the DUI pay for visitation. The evidence at the hearing was that visitation between a parent and a child is a necessary mental health component. With regard to transportation, my understanding is that it was in the IEP, but your claim was they weren't doing it. Well, it was in the IEP. It was in the settlement agreement, and the DUI was not doing it. They had not done it for 15 months, and they had miraculously started doing it a few days before the hearing. And so it was not a major issue. The Lublin Academy was providing staff, which they couldn't really expend, to transport him from his residential component to the school. And so at the time of the pre-hearing, we agreed that was not going to be a major issue. Regardless, the testimony was that the DUI had continually and constantly failed to provide his transportation services with the one-to-one aid and nevertheless ordered the DUI in his decision to provide transportation, and that decision wasn't appealed. The visitation order, the DUI recommended or suggested that maybe four times a year would be a good idea, but it was never incorporated in an IEP or a prior written notice. It was just anecdotal information to the parent saying, yeah, it's a good idea, we'll consider it. And that was the hearing officer's decision. He said, you never put it in the IEP. This is a necessary related services for the mental health of this student and ordered it once a month, which was- We're running over time here. Oh, sorry. Do you want to sum up on that in a sentence or two and then address fees? Yes. These issues were unappealed. They were prevailing under the parks. They don't have to be the primary issue. Therefore, I was a prevailing party. What Judge Moway did was actually reach into the past and file an appeal on behalf of the state, granted that appeal and dismissed the prevailing aspects of that case and found that I wasn't a prevailing party. Also under- The basis she denied fees was because you didn't comply technically, at least with the local rules, right? That's what she said. What was your response to that? You can't deny fees under Local Rule 543. What 543 sub B says is if you don't do your SOC, your statement of consultation, we're not going to consider your fee request. What Magistrate Schenk has said- What's the difference between we're going to deny and we're not going to consider? We will deny. But Judge Schenk considered it. He said under abundance of common, I'm going to consider your motion anyway. I'm going to waive the sanction. I'm going to review- She said that? Judge Schenk did that. The Magistrate was- All he does is make a recommendation. And the judge accepted those recommendations and she also reviewed. She also considered my request for fees. You're not really responding to my question. Didn't she deny the order on the basis that you didn't comply with the local rule? Yes. Well, what's your response to that? That she improperly-my response is that I did substantially comply with the local rule. By your earlier meeting? Because of your earlier meetings. Because of the earlier meetings and the confidential settlement agreement. I did deliver to the court the consultations, the nature of the consultations, the time of the consultations, and the fact that the only thing that the deputy has ever offered me was a couple of grants. He said he was not going to give me anything, maybe a couple of grants. And that was all that came from. It was clear that the State was not going to pay anything on the fees. And that was clear to Judge Schenk. And customarily, when the court is going to appraise that, there's no way that the matter is going to be settled. They rule, as they did in his first recommendation to Judge Mulway, that my motion for fees be granted. And so that's it. And irrespective of that, Judge Mulway, I'll also consider my fees. Okay. Thank you very much. Thank you. Okay. 09-15988, 09-17608, submitted.
judges: Tashima, Fletcher W. , Berzon